UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

Luis Enrique Olivares Ojeda, Lucero Flores Rosa, Jose Abraham Salas Morales, Gregorio Alejandro Yac Sulugui, and Teresa Salas Salazar, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

1787 Realty Corp. (d/b/a Peter Rosito Fruit and Vegetable), King Apple Farmers Market 3 Corp. (d/b/a Peter Rosito Fruit and Vegetable), and Peter Rosito,

Defendants.

---------------------------------------------------------X

**REPORT AND RECOMMENDATION**

24 CV 03691 (EK) (PCG)

**CROSS-GOLDENBERG**, United States Magistrate Judge:

On May 22, 2024, Plaintiffs Luis Enrique Olivares Ojeda ("Plaintiff Olivares"), Lucero Flores Rosa ("Plaintiff Flores"), Jose Abraham Salas Morales ("Plaintiff Morales"), Gregorio Alejandro Yac Sulugui ("Plaintiff Yac"), and Teresa Salas Salazar ("Plaintiff Salazar") commenced this action against Defendants 1787 Realty Corp. (d/b/a Peter Rosito Fruit and Vegetable), King Apple Farmers Market 3 Corp. (d/b/a Peter Rosito Fruit and Vegetable), and Peter Rosito ("Defendant Rosito"), seeking unpaid minimum and overtime wages, compensation for statutory wage notice and wage statement violations, liquidated damages, pre-judgment interest, and attorneys' fees and costs under the Fair Labor Standards Act 29 U.S.C. § 201 et seq. ("FLSA"), and the N.Y. Labor Law §§ 190 et seq. and 650 et seq. (the "NYLL"). (See Dkt. No. 1, Compl.) Plaintiffs twice amended their complaint; the operative complaint is the Second

Amended Complaint. (See Dkt. No. 28, Second Amended Complaint ("SAC").)

Presently before the Court is Plaintiffs' Motion for Default Judgment against Defendants Rosito and King Apple Farmers Market 3 Corp. (collectively the "Remaining Defendants"), Dkt. No. 40, which District Judge Eric R. Komitee referred to Magistrate Judge Cheryl L. Pollak on September 18, 2025. The case was reassigned to the undersigned on January 15, 2026. For the reasons set forth below, the Court respectfully recommends that Plaintiffs' Motion for Default Judgment be granted and Plaintiffs be awarded $198,740.63 in unpaid minimum wages, $216,823.52 in unpaid overtime wages, $415,564.15 in liquidated damages, $50,000 in statutory damages, pre-judgment interest at the statutory rate of 9 percent from the median dates established infra until judgment is entered, and $2,065 in attorneys' fees and costs.

## FACTUAL HISTORY

According to the Second Amended Complaint, Individual Defendant Rosito and corporate Defendants 1787 Realty Corp. and King Apple Farmers Market 3 Corp. owned, operated and controlled a produce store under the name "Peter Rosito Fruit and Vegetable," located at 1787 Bay Ridge Avenue, Brooklyn NY, 11201. (SAC ¶ 2.) Plaintiffs allege that the produce store was an enterprise engaged in interstate commerce, using numerous items daily that were produced outside of the State of New York, and that Defendants had a gross annual volume of sales over $500,000. (Id. ¶ 35, 36.) Plaintiffs allege that Defendant Rosito was the owner, manager, principal, or agent of Peter Rosito Fruit and Vegetable, and that he controlled significant functions, including determining Plaintiffs' wages and compensation, establishing the schedules of the employees, maintaining employee records, and hiring and firing employees. (Id. ¶ 26.)

Plaintiffs allege that they were employed as produce workers and/or cashiers of Peter Rosito Fruit and Vegetable during all periods relevant to the Second Amended Complaint. (Id. ¶ 4, 37.) Plaintiffs further allege that, at all times relevant, Plaintiffs worked for Defendants in excess of forty hours per week, without appropriate minimum wage and overtime compensation. (Id. ¶ 5.) Plaintiffs allege that Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs the required minimum and overtime wages. (Id. ¶ 6.)

Defendants employed Plaintiff Olivares as a produce worker from approximately 1998 until on or about September 3, 2023. (Id. ¶ 39-40.) Plaintiff Olivares alleges that from approximately May 2018 until on or about September 3, 2023, he worked from approximately 6:00 a.m. until about 3:00 p.m. seven days a week, totaling 63 hours per week, and that, during this time, Defendants paid him a fixed salary of $80 per day in cash. (Id. ¶ 44-46.) Plaintiff Olivares further alleges that Defendants failed to provide him with a Notice of Pay rate or accurate wage statements as required under the FLSA and the NYLL. (Id. ¶ 48-50.)

Defendants employed Plaintiff Flores as a cashier from approximately May 2008 until on or about August 21, 2023. (Id. ¶ 53-54.) Plaintiff Flores alleges that from approximately May 2018 until on or about August 21, 2023, she worked from approximately 8:00 a.m. until about 5:00 p.m. three days a week and from approximately 10:00 a.m. until about 7:00 p.m., two days a week, totaling 45 hours per week. (Id. ¶ 58-59.) Plaintiff Flores alleges that from approximately May 2018 until on or about June 30, 2020, Defendants paid her a fixed salary of $80 per day in cash. (Id. ¶ 60.) Plaintiff Flores further alleges that from approximately July 1, 2020 until on or about February 28, 202[3][1], Defendants paid Plaintiff Flores a fixed salary of $100 per day, and

---

[1] Plaintiff Flores alleges that she worked from approximately 2008 through August 21, 2023 and does not allege an interruption. (See SAC ¶¶ 53, 58.) Plaintiff Flores further breaks down her work period and alleges that she worked "from July 1, 2020 until February 28, 2020." (Id. ¶¶ 61.) Since this is chronologically impossible, the Court views this as a scrivener's error and will construe Plaintiff's allegation as having worked from July 1, 2020 until February

from approximately March 1, 2023 until on or about August 21, 2023, Defendants paid Plaintiff Flores a fixed salary of $120 per day. (Id. ¶ 61-62.) Plaintiff Flores further alleges that Defendants failed to provide her with a Notice of Pay rate or accurate wage statements as required under the FLSA and the NYLL. (Id. ¶ 64-66.)

Defendants employed Plaintiff Morales as a produce worker from approximately June 1999 until on or about September 5, 2023. (Id. ¶ 68-69.) Plaintiff Morales alleges that from approximately May 2018 until on or about October 31, 2020, he worked from approximately 5:00 a.m. until about 2:00 p.m., seven days a week, totaling 63 hours. (Id. ¶ 73.) Plaintiff Morales alleges that from approximately November 1, 2020, until on or about June 30, 202[2],[2] he worked from approximately 6:00 a.m. until on or about 3:00 p.m., seven days a week, totaling 63 hours per week. (Id. ¶ 74.) Plaintiff Morales alleges that from approximately July 1, 2022, until on or about September 5, 2023, Plaintiff Morales worked from approximately 6:00 a.m. until on or about 4:00 p.m., seven days a week, totaling 70 hours per week. (Id.) He alleges that, from approximately May 2018 until on or about June 30, 2022, Defendants paid him a fixed salary of $680 per week, and that from approximately July 1, 2022, until on or about September 5, 2023, Defendants paid Plaintiff Morales a fixed salary of $800 per week in cash. (Id. ¶ 77-78.) Plaintiff Morales further alleges that Defendants failed to provide him with a Notice of Pay rate or accurate wage statements as required under the FLSA and the NYLL. (Id. ¶¶ 80-81.)

---

28, 2023. The Court uses this timeline to calculate Plaintiff's damages. (See infra.) See Golden Bridge LLC v. Queensway Builders LLC, No. 22 CV 3551 (AMD) (TAM), 2023 WL 5533352 (E.D.N.Y. Aug. 10, 2023), report and recommendation adopted, No. 1:22 CV 3551 (AMD) (TAM), 2023 WL 5533494 (E.D.N.Y. Aug. 28, 2023) (noting that "Plaintiff's complaint appears to have a few typographical errors, which the Court finds to be harmless scrivener's errors").

[2] Plaintiff Morales alleges that he worked from approximately 1999 to September 5, 2023 and does not allege an interruption. (SAC ¶¶ 68-69.) Plaintiff Morales breaks down his work period and alleges that he worked "from November 1, 2020, until on or about June 30, 2020." (Id. ¶ 74.) Since this is chronologically impossible, the Court also views this as a scrivener error and will construe Plaintiff's allegation as having worked from November 1, 2020 to June 30, 2022. The Court uses this timeline to calculate Plaintiff's damages. (See infra.)

Defendants employed Plaintiff Yac as a produce worker. Plaintiff Yac's allegations regarding the time he worked for Defendants are inconsistent. The Second Amended Complaint alleges that Yac "was employed by Defendants from approximately 2007 until on or about September 3, 2023." (SAC, ¶ 85.) During this period, he worked from approximately 6:00 a.m. until about 3:00 p.m. six days a week, totaling 54 hours per week. (Id. ¶ 90.) The Second Amended Complaint also alleges that "[f]rom approximately the month of October 2023," he worked six days per week. (Id. ¶ 91.) Plaintiff Yac was paid $110 per day "from approximately May 2018 until on or about September 3, 2023," but the Second Amended Complaint does not state how much he was paid during the month of October. (See SAC, ¶ 93.) Plaintiff Yac's Declaration contains the same inconsistencies. (See Dkt. No. 41-11, Yac Decl. ¶ 8 ("I worked for Defendants . . . from approximately 2007 until on or about September 3, 2023"), ¶12 ("For approximately the month of October 2023, I worked from approximately 7:00 a.m. until on or about 5:00 p.m., 6 days a week (typically 60 hours per week)"), ¶ 14 ("From approximately May 2018 until on or about September 3, 2023, Defendants paid me a fixed salary of $110 per day.")) Plaintiffs' damages chart creates further confusion by indicating that Plaintiff Yac worked during the time period of "1/1/2023 – 9/30/2023," which neither matches the Complaint nor his declaration. (Compare Dkt. No. 41-4, Damages Chart with SAC ¶¶ 85-93 and Dkt. No. 41-11, Yac Decl. ¶¶ 8-14.) Plaintiff Yac further alleges that Defendants failed to provide him with a Notice of Pay rate or accurate wage statements as required under the FLSA and the NYLL. (SAC ¶¶ 95-96.)

Defendants employed Plaintiff Salazar as a cashier from approximately March 2003 until on or about August 31, 2023. (Id. ¶ 99-100.) Plaintiff Salazar alleges that from approximately May 2018 until on or about August 31, 2023, she worked from approximately 8:00 a.m. until

about 5:00 p.m., three days a week and from approximately 10:00 a.m. until about 7:00 p.m., two days a week, totaling 45 hours per week. (Id. ¶ 103.) Plaintiff Salazar alleges that from approximately May 2018 until on or about February 2020, Defendants paid her a fixed salary of $90 per day, from approximately March 1, 2020, until on or about December 31, 2021, Defendants paid her a fixed salary of $100 per day, and from approximately January 1, 2022, until on or about August 31, 2023, Defendants paid her a fixed salary of $115 per day in cash. (Id. ¶¶ 105-107.) Plaintiff Salazar further alleges that her pay did not vary even when she was required to stay later or work a longer day than her usual schedule. (Id. ¶ 108.) Plaintiff Salazar further alleges that Defendants failed to provide her with a Notice of Pay rate or accurate wage statements as required under the FLSA and the NYLL. (Id. ¶¶ 111-12.)

Plaintiffs allege that Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees and bring this action on behalf of themselves and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act 29 U.S.C. § 201 et seq. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 et seq. and 650 et seq. ("NYLL"), including liquidated damages, interest, attorneys' fees and costs. (Id. ¶¶ 8, 10.)

## PROCEDURAL HISTORY

Plaintiffs Lucero Flores Rosa, Luis Enrique Olivares Ojeda, Jose Abraham Salas Morales Teresa Salas Salazar, and Gregorio Yac Sulugui commenced this action by filing an initial Complaint on May 22, 2024. (See Dkt. No. 1, Compl.) Plaintiffs twice moved to amend the Complaint to correct and add the proper corporate defendants. (See Dkt. No. 9, Motion to Amend Complaint; Dkt. No. 26, Second Motion to Amend Complaint.)

On May 20, 2025, Plaintiffs filed a Second Amended Complaint against Individual Defendant Peter Rosito and corporate Defendants 1787 Realty Corp. and King Apple Farmers Market 3 Corp. (See SAC.) The corporate Defendants were each served with the Summons and Complaint on July 2, 2025, and individual Defendant Rosito was served with a copy of the Summons and Complaint on July 11, 2025. (See Dkt. Nos. 36, 37.) Defendants did not answer or otherwise respond to the Complaint. On August 11, 2025, Plaintiffs moved for entry of default. (See Dkt. No. 38.) On August 12, 2025, the Clerk of the Court entered default against Defendants. (See Dkt. No. 39.)

On September 12, 2025, Plaintiffs moved for default judgment against all Defendants. Dkt. No. 40, including with their motion the Second Amended Complaint, Dkt. No. 41-1; Affidavits of Service, Dkt. No. 41-2; the Clerk's Certificate of Default, Dkt. No. 41-3; a damages chart, Dkt. No. 41-4; a list of services and costs expended, Dkt. No. 41-5; a proposed judgment, Dkt. No. 41-6; and Declarations from each Plaintiff, Dkt. No. 41-7 (Flores Decl.); Dkt. No. 41-8 (Olivares Decl.); Dkt. No. 41-9 (Morales Decl.); Dkt. No. 41-10 (Salazar Decl.); Dkt. No. 41-11 (Yac Decl.) Plaintiffs also submitted a memorandum of law in support of their motion. (Dkt. No. 42.) Plaintiffs served their default motion and supporting documents on Defendants on September 15, 2025, and filed proof of service on the docket. (Dkt. Nos. 43, 44.) On September 18, 2025, Juge Komitee referred the motion for default judgment to Magistrate Judge Cheryl L. Pollak. (Order dated Sept. 18, 2025.)

On October 22, 2025, counsel for Defendant 1787 Realty Corp. filed a notice of appearance, Dkt. No. 45, and the parties subsequently stipulated to vacate the entry default as to Defendant 1787 Realty Corp. (Dkt. No. 46, Stipulation.) Magistrate Judge Cheryl L. Pollack so-

ordered the stipulation, Dkt. No. 47, and scheduled an initial conference for Nov. 12, 2025. (Dkt. No. 48, Scheduling Order.)

On November 9, 2025, Defendant 1787 Realty Corp. filed an Answer to the Amended Complaint. (Dkt. No. 49.) On November 12, 2025, Plaintiff and Defendant 1787 Realty Corp. appeared at the initial conference before Magistrate Judge Cheryl L. Pollak and were ordered to commence discovery. (Minute Entry for Initial Conference, dated Nov. 12, 2025.) On January 15, 2026, the case was reassigned to Magistrate Judge Peggy Cross-Goldenberg. On February 2, 2026, Plaintiffs and Defendant 1787 Realty submitted a joint status report requesting a referral to the Eastern District of New York's mediation program. (Dkt. No. 50, Status Report.) On February 4, 2026, the Court referred the parties to mediation. (Order entered Feb. 4, 2026.)

On March 23, 2026, the parties reported that they settled the case during mediation in principle, and Plaintiffs filed a notice of acceptance of Defendant 1787 Realty Corp.'s offer of judgment. (Dkt. No. 51.) The following day, the Clerk of the Court entered judgment for Plaintiffs, jointly and severally, in the amount of $15,000 against Defendant 1787 Realty Corp (d/b/a Peter Rosito Fruit and Vegetable). (See Dkt. No. 52.)

On April 1, 2026, Judge Komitee referred the still-pending motion for default judgment to the undersigned for a Report and Recommendation. (Order Referring Motion, dated Apr. 1, 2026.) On April 14, 2026, the Court entered a Satisfaction of Judgment in favor of Plaintiffs against 1787 Realty Corp. (Dkt. No. 53.) On August 6, 2026, this Court ordered Plaintiffs' to submit a supplemental memorandum of law and, if necessary, a revised damages chart addressing how Plaintiffs' settlement with Defendant 1787 Realty Corp. impacts the pending motion for default Judgment. (Order, dated Aug. 6, 2026.) On August 13, 2026, Plaintiffs filed their supplemental memorandum.

Currently pending before this Court is Plaintiffs' Motion for Default Judgment against Defendants Rosito and King Apple Farmers Market 3 Corp. (Dkt. No. 40.)

DISCUSSION

I. Default Judgment – Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993.) First, the Clerk of the Court automatically enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See id. Second, after the Clerk of the Court enters a default against a party, if that party fails to appear or otherwise moves to set aside the default pursuant to Rule 55(c), the court may enter default judgment. See Fed. R. Civ. P. 55(c).

When a defendant defaults, the defendant is deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages." See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); Wing v. E. River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); see also Hernandez Gomez v. 4 Runners, Inc., 769 F. App'x 1, 2 (2d Cir. 2019) (summary order). The Court, however, must review the allegations in the complaint to determine if the elements of each claim have been adequately pleaded prior to granting a request for default judgment. See Allstate Ins. Co. v. Tapper, No. 14-CV-5410 (BMC), 2015 WL 6869702, at *2 (E.D.N.Y. Nov. 9, 2015).

In determining whether a default judgment should be entered, the Second Circuit has cautioned that a default judgment is an extreme remedy that "must remain a weapon of last,

rather than first, resort." Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." Enron Oil Corp., 10 F.3d at 95–96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because the defendants are in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The court has significant discretion and may consider a number of factors in deciding whether to grant a default judgment. These factors include: (1) whether the defendant's default was willful; (2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Jimenez v. Green Olive Inc., 744 F. Supp. 3d 221, 238 (E.D.N.Y. 2024) (citing Canon U.S.A., Inc. v. Sysorex Gov't Servs., Inc., No. 23-CV-8001 (DLI) (LGD), 2024 WL 1914347, at *3 (E.D.N.Y. May 1, 2024) report and recommendation adopted (Sept. 26, 2024), judgment entered, No. 23-CV-8001 (DLI) (LGD), 2024 WL 4648166 (E.D.N.Y. Sept. 27, 2024)). A defendant's default is "willful" if "it is sufficient to conclude that the defendant defaulted deliberately." Canon U.S.A., Inc., 2024 WL 1914347, at *3 (quoting Leger v. Navila Asset Mgmt. Inc., No. 20-CV-3820 (EK) (RML), 2023 WL 2352843, at *2 (E.D.N.Y. Feb. 6, 2023), report and recommendation adopted, 2023 WL 2349581 (E.D.N.Y. Mar. 3, 2023). As

long as service on the defendant is proper, "failure to respond to a complaint demonstrates willful default." Id. (citing S.E.C. v. McNulty, 137 F.3d 732, 738–39 (2d Cir. 1998)).

A default judgment must not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); see also King v. STL Consulting LLC, No. 05 CV 2719 (SJ), 2006 WL 3335115, at *4–5 (E.D.N.Y. Oct. 3, 2006) (holding that Fed. R. Civ. P. 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages). Additionally, a court may consider whether the facts alleged in the complaint state a valid cause of action, whether there are unresolved questions regarding material issues of fact as to liability or damages, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp., 653 F.2d at 65; 10A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2685 (4th ed. 2025) (discussing factors).

## II. Liability

Plaintiffs allege that the Remaining Defendants willfully violated the FLSA and NYLL by failing to pay minimum and overtime wages and further violated the NYLL by failing to provide Plaintiffs with proper wage notices at time of hiring and failing to provide accurate wage statements throughout Plaintiffs' employment. (SAC. ¶¶ 119, 129, 136, 140, 145, 149.)

It is beyond dispute that the Remaining Defendants are in default since they have failed to file an Answer to the Complaint, failed to oppose Plaintiffs' motion for default judgment, and failed to challenge the Court's entry of a default. See Hirsch v. Innovation Int'l, Inc., No. 91 CIV

4130 (MJL), 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion").

For the reasons discussed below, the Court finds that Plaintiffs have alleged a basis for finding liability sufficient to warrant entry of a default judgment against the Remaining Defendants. In consequence, the Court respectfully recommends that the motion for default be granted.

A. Statute of Limitations

As a threshold matter, the Court must consider whether Plaintiffs' claims are timely. The statute of limitations under the FLSA is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful' and the three year statute of limitations applies." Rodriguez v. Queens Convenience Deli Corp., No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing Blue v. Finest Guard Servs., Inc., No. 09-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010), report and recommendation adopted, No. 09-CV-133 (ARR)(CLP), 2010 WL 2927403 (E.D.N.Y. July 19, 2010)). "Courts have held that for the purposes of establishing the statute of limitations under FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period." Shu Qin Xu v. Wai Mei Ho, 111 F. Supp. 3d 274, 278 (E.D.N.Y. 2015) (quoting Addison v. Reitman Blacktop Inc., 283 F.R.D. 74, 81 (E.D.N.Y. 2011)); see also 29 C.F.R. § 790.21(b) ("[A] cause of action ... for unpaid minimum wages or unpaid overtime compensation and for liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day"). Therefore, where a plaintiff has established willfulness they may recover on their FLSA claims from three years before the complaint was

filed. Wicaksono v. XYZ 48 Corp., No. 10 CIV. 3635 (LAK)(JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), report and recommendation adopted, No. 10 CIV. 3635 (LAK), 2011 WL 2038973 (S.D.N.Y. May 24, 2011) (where plaintiff filed complaint on May 4, 2010 and started working for defendants on February 28, 2007, plaintiff could not recover damages under the FLSA from February 28, 2007 to May 4, 2007).

Under the NYLL, the statute of limitations for unpaid wage claims is six years. NYLL § 663(3). Even if plaintiffs' FLSA claims are time-barred, they may still recover unpaid wages under the NYLL's more liberal six-year statute of limitations. Plaintiffs may not, however, simultaneously recover under both statutes. Hernandez v. Pro. Maint. & Cleaning Contractors Inc., No. 13-CV-2875 (FB) (LB), 2015 WL 128020 (E.D.N.Y. Jan. 8, 2015) (citing Maldonado v. La Nueva Rampa, Inc., No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *9 (S.D.N.Y. May 14, 2012)); see also Hernandez v. JRPAC Inc., No. 14 Civ 4176 (PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) ("Plaintiffs' damages award under the NYLL necessarily will subsume their award under the FLSA, both because of the higher minimum wage that governed during certain periods and because of the longer period covered by the NYLL").

In the instant case, Plaintiffs filed their complaint on May 22, 2024 and have calculated their damages from May 1, 2018. (See generally SAC, Dkt. No. 41-4, Damages Chart.) Plaintiffs allege that the Remaining Defendants acted willfully when failing to pay them the required wages. (SAC ¶¶ 119, 129, 136, 140, 145, 149.) Because the Remaining Defendants have not appeared and have defaulted, the Court deems this fact admitted. As such, the relevant statute of limitations under the FLSA is three years and Plaintiffs may recover only on FLSA claims dating back to May 22, 2021. Plaintiffs may recover on their NYLL claims for the week starting on May 21, 2018, six years before Plaintiffs filed their Complaint.

B. Plaintiffs' FLSA Claims

Plaintiffs bring claims under the FLSA for unpaid minimum and overtime wages.

1. Threshold FLSA Requirements

To establish a claim under the FLSA, a plaintiff must prove that: (1) the defendant is an employer subject to FLSA; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. Edwards v. Cmty Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing 29 U.S.C. §§ 206(a), 207(a); Tony & Susan Alamo Found. v. Sec'y of Lab., 471 U.S. 290, 295 (1985)).

2. Employers Subject to FLSA

Employers are subject to the minimum wage and overtime provisions of the FLSA if they are either an "[e]nterprise engaged in commerce or in the production of goods for commerce" and have an annual gross volume of sales greater than $500,000 ("enterprise coverage") or if they have employees who are "engaged in commerce or in the production of goods for commerce, or [] handl[e], sell[], or otherwise work[] on goods or materials that have been moved in or produced for commerce by any person" ("individual coverage"). 29 U.S.C. § 203(s)(1)(A), 206(a), 207(a)(1); Shim v. Millennium Grp., No. 08-CV-4022 FB/VVP, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009). An individual may be liable as an "employer" under the FLSA if he exercises "operational control" over the employees in question, see Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013), and individuals who are found to be "employers" under the FLSA may be held jointly and severally liable to the plaintiff. Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002); see also Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011).

Here, Plaintiffs allege that the Remaining Defendants were directly engaged in interstate commerce because "numerous items that were used in the [] produce store on a daily basis are goods produced outside of the State of New York." (SAC ¶ 36.) Plaintiffs also allege that in each year from 2018 to 2023, the Remaining Defendants "both separately and jointly, had a gross annual volume of sales of not less than $500,000." (Id. ¶ 35.) Plaintiffs further allege that they "regularly handled goods in interstate commerce, such as produce and other supplies produced outside the State of New York." (Id. ¶¶ 41, 55, 70, 87, 101.) Thus, Plaintiffs have adequately alleged that the Remaining Defendants are covered employers under the FLSA.

In addition, Plaintiffs allege that Defendant Rosito "serves and/or served as owner, manager, principal, or agent of Defendant Corporations and, through these corporate entities, operates or operated a produce store as a joint or unified enterprise." (Id. ¶ 3.) Defendant Rosito possessed operational control over the produce store and controlled significant functions of it, while also determining employees' wages and compensation, establishing employees' work schedules, maintaining employee records, and possessing the ability to hire and fire employees. (Id. ¶ 26.) Defendant Rosito thus exercised sufficient "operational control" to make him individually liable as an employer under the FLSA.

3. Employees Covered under FLSA

Employees covered by FLSA are those individuals that are "employed by an employer." 29 U.S.C. § 203(e)(1); Edwards, 251 F. Supp. 2d at 1098. An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To "employ" "includes to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production

of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a).

Here, Plaintiffs allege that they were produce workers and/or cashiers and that their work neither required discretion nor independent judgment. (SAC ¶¶ 37, 42, 56, 71, 88, 102.) Plaintiffs allege that they were individually engaged in interstate commerce because they "regularly handled goods in interstate commerce, such as produce and other supplies produced outside the State of New York." (Id. ¶¶ 41, 55, 70, 87, 101.) Plaintiffs allege that Defendant Rosito controlled their work schedule, set their pay, and had the authority to hire and fire employees. (Id. ¶ 26, Flores Decl. ¶ 5, Olivares Decl., ¶ 5, Morales Decl., ¶ 5, Salas Decl., ¶ 5, Yac Decl., ¶ 5.) Thus, based on the allegations in the complaint and Plaintiffs' declaration, each Plaintiff qualifies as an "employee," and the Remaining Defendants qualify as "employers" under the FLSA.

4. Exempt Employment Relationship

Even if a plaintiff can prove that the defendant is subject to FLSA and that he is an employee covered under FLSA, he may still be barred from recovery if he falls under a FLSA exemption. An employee's "exempt status depends less on his title, and more on the actual duties performed." McBeth v. Gabrielli Truck Sales, Ltd., 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010) (citing Cooke v. Gen. Dynamics Corp., 993 F. Supp. 56, 61 (D. Conn. 1997)). However, it is the defendant's burden to establish that a plaintiff falls within one of the exemptions. Rodriguez v. MRC Bakery Corp., 802 F. Supp. 3d 393, 423 (E.D.N.Y. 2025). "On a motion for a default judgment, therefore, a court may find that litigants are not exempt employees if they 'do not allege any facts that would make them exempt under the FLSA or NYLL.'" Borja v. MSK Rest. Corp., No. 22-CV-6178 (EK) (VMS), 2025 WL 951402, at *12 (E.D.N.Y. Mar. 13, 2025),

report and recommendation adopted sub nom. Borja v. MSK Restaurant Corp., No. 22-CV-6178 (EK) (VMS), 2025 WL 948122 (E.D.N.Y. Mar. 29, 2025) (quoting Cao v. Wedding in Paris LLC, 727 F. Supp. 3d 239, 275 (E.D.N.Y. 2024)).

Here, the Remaining Defendants have defaulted and have not alleged any facts that establish that Plaintiffs are exempt from coverage under the FLSA. Nor have Plaintiffs alleged any facts that would make them exempt. Thus, none of the exemptions under the FLSA apply to Plaintiffs.

5. FLSA Minimum Wage Claims

Plaintiffs allege that the Remaining Defendants willfully failed to pay Plaintiffs the applicable minimum wage, in violation of 29 U.S.C. Sections 206(a) and 255(a). (SAC ¶¶ 135-136.) At all times relevant to Plaintiffs' FLSA claims, the minimum wage rate under the FLSA was $7.25. (Pls.' Mem. of Law, ¶ 98.) Plaintiffs were paid hourly wages between $8.89 and $13 depending on the Plaintiff and the time period. (See Dkt. No. 41-2, Damages Chart.)[3]

Accordingly, Plaintiffs' hourly wages were at all relevant times *above* the minimum wage under the FLSA. Plaintiffs have thus not established liability as to their FLSA minimum wage claims.

6. FLSA Overtime Claims

Plaintiffs allege that, throughout their employment, the Remaining Defendants failed to pay them statutorily mandated overtime wages as required under the FLSA. (SAC ¶¶ 139-140.) Section 207(a)(1) of the FLSA requires employers to compensate employees for hours worked in

[3] Plaintiffs' damages chart mistakenly lists Plaintiff Morales's regular rate of pay as being between $17 and $20. (Damages Chart.) He worked 63 hours per week and was paid $680 per week, making his hourly rate $10.79.

excess of 40 hours per week at a rate of at least one and one-half times the regular rate. 29 U.S.C. § 207(a)(1). To establish liability, plaintiffs must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." Lundy v. Cath. Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013). When employers pay their employees weekly, "[t]here is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." Jiao v. Shi Ya Chen, No. 03 CIV. 0165 (DF), 2007 WL 4944767, at *13 (S.D.N.Y. Mar. 30, 2007) (citing Giles v. City of New York, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999).

Here, Plaintiffs allege that at all times in the relevant pay periods, they worked in excess of 40 hours. (SAC ¶¶ 43, 44, 57, 58, 72-75, 89-91, 103; Flores Decl. ¶ 10, Olivares Decl., ¶ 10, Morales Decl., ¶ 10, Salazar Decl., ¶ 10, Yac Decl., ¶ 10.) Plaintiffs further allege that they were not compensated at the applicable overtime rate for the hours of overtime they worked. (Flores Decl. ¶ 18, Olivares Decl., ¶ 16, Morales Decl., ¶ 18, Salazar Decl., ¶ 17, Yac Decl., ¶ 16.) Because the Remaining Defendants have defaulted, the Court accepts as true Plaintiffs' uncontested allegations and respectfully recommends that Plaintiffs be deemed to have established the necessary elements to state an overtime wage claim under the FLSA against the Remaining Defendants.

7. FLSA Collective Action Claim

Plaintiffs' Complaint requests that the Court designate this action as a collective action. (SAC, Prayer for Relief.) Under the FLSA, employees may sue on behalf of themselves and all

other similarly situated employees. 29 U.S.C. § 216(b). If other employees want to join the action they must "opt in" by written consent. Id. The plaintiff must then make a factual showing that they and the potential opt-in plaintiffs were "victims of a common unlawful policy or plan," after which the court will conditionally certify the action by sending notice to the potential plaintiffs. Jimenez, 744 F. Supp. 3d at 251 (citing Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)). However, where a plaintiff fails to reiterate his collective action certification request in his Motion for Default Judgment, courts will deem the request waived. See Cooper v. Fire & Ice Trucking, Corp., No. 23-CV-1675 (KAM) (TAM), 2024 WL 3344001, at *9 (E.D.N.Y. July 9, 2024) ("Because Plaintiff did not reiterate his collective action certification request in his Motion for Default Judgment, the Court considers the collective action abandoned."); Galicia v. 63-68 Diner Corp., No. 13-CV-3689 (PKC), 2015 WL 1469279, at *1 (E.D.N.Y. Mar. 30, 2015) ("Because Plaintiff now seeks a default judgment and has not reiterated his request for collective action in the present motion, the Court considers Plaintiffs' collective action request waived.").

In the instant case, even though Plaintiffs requested collective action certification in their Complaint, their Motion for Default Judgment failed to reiterate this request. (Compare SAC, Prayer of Relief with Pls.' Mem.) Accordingly, the Court respectfully recommends that the District Court deem Plaintiffs' collective action request waived.

C. NYLL Claims

Plaintiffs allege that Defendants violated several provisions of the NYLL.

1. Threshold Requirements Under the NYLL

To establish violations of the NYLL, Plaintiffs must establish that they were covered "employee[s]," meaning that they were "individuals employed or permitted to work by an

employer in any occupation." NYLL § 651(5). The NYLL does not require that a defendant achieve a certain minimum in annual sales or business to be subject to the law. See NYLL § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as [an] employer").

Here, Plaintiffs allege that they worked for the Remaining Defendants, and that the Individual Defendant was the owner, manager, principal, or agent of the corporate Defendants, and was responsible for hiring and firing employees, determining their wages and compensation, and establishing their schedules. (SAC ¶¶ 3, 26.) As the Remaining Defendants have not contested Plaintiffs' allegations, the Court accepts Plaintiffs' allegations as true and finds that they were covered employees under the NYLL.

2. NYLL Minimum Wage Claim

Plaintiffs allege that the Remaining Defendants paid them less than the applicable statutory minimum wage for their hours worked, violating NYLL § 652 and the supporting New York State Department of Labor regulations, including 12 N.Y.C.R.R. Part 146-1.2. (SAC ¶ 144.) The NYLL establishes minimum wage rates that increase over time and that depend on the size of the employer. See 12 N.Y.C.R.R. §146-1.2. Plaintiffs have calculated their owed minimum wage using the minimum wage rate in New York City for small employers, which is lower than the rate for large employers. (See Damages Chart; Pls.' Mem. ¶ 99.) See NYLL § 652(1)(a)(i)-(ii); see also 12 N.Y.C.R.R. § 146-1.2(a)(1)(i)(a)–(b). The New York City minimum wage rate for small employers from the start of the claim period May 22, 2018, through December 30, 2018 was $12 per hour. See N.Y. State Dep't of Labor, History of the Minimum Wage in New York State, https://dol.ny.gov/history-minimum-wage-new-york-state ("$12.00 per

hour on and after December 31, 2017"). From December 31, 2018 through December 30, 2019, the minimum wage rate was $13.50. Id. From December 31, 2019 through the end of Plaintiffs' employment in 2023, the minimum wage rate was $15. Id.[4]

Plaintiff Olivares alleges that during his employment period from May 2018 through September 2023, he regularly worked nine hours per day, seven days per week (63 hours per week), and was paid $80 per day, resulting in an hourly rate of $8.89. (SAC ¶¶ 39-46.) The minimum wage was $12 from May 2018 through December 30, 2018, $13.50 from December 31, 2018 through December 30, 2019, and $15 from December 31, 2019 until September 2023. Accordingly, he has stated a claim for minimum wage violations.

Plaintiff Flores alleges that during her employment period from May 2018 through August 2023, she regularly worked nine hours per day, five days per week (45 hours per week). (SAC ¶ 58.) From May 22, 2018 to June 30, 2020, she was paid $80 per day, resulting in an hourly rate of $8.89. (Id. ¶ 60.) The minimum wage was $12 from May 2018 through December 30, 2018 and $13.50 from December 31, 2018 through December 30, 2019. From July 1, 2020 to February 28, 2023, she was paid $100 per day, resulting in an hourly rate of $11.11. (Id. ¶ 61.) From March 2023 to August 21, 2023, Plaintiff Flores was paid $120 per day, resulting in an hourly rate of $13.33. (Id. ¶ 62.) The minimum wage was $15 from December 31, 2019 until September 2023. Accordingly, Plaintiff Flores has stated a claim for minimum wage violations for all employment periods.

---

[4] Plaintiffs used incorrect minimum wage rates in their damages calculations. From May 2018 through December 31, 2018, Plaintiffs stated that the minimum wage was $13.50. From January 1, 2019 through the end of Plaintiffs' claim period, Plaintiffs stated that the minimum wage was $15.

Plaintiff Morales alleges that he worked from May 2018 through September 2023. (SAC ¶ 73.) From May 22, 2018 through June 30, 2022, he worked nine hours per day, seven days per week (63 hours per week) and was paid $680 per week, resulting in an hourly rate of $10.79. (SAC ¶74-77.) From July 1, 2022 through September 5, 2023, Plaintiff Morales worked 10 hours per day, seven days per week (70 hours per week), and was paid $800 per week, resulting in an hourly rate of $11.43. (Id. ¶ 78.) The minimum wage rate was $12 from May 2018 through December 30, 2018, $13.50 from December 31, 2018 through December 30, 2019, and $15 from December 31, 2019 through the end of Plaintiff's employment period. Accordingly, Plaintiff Morales has stated a claim for minimum wage violations for all employment periods.

Plaintiff Yac alleges that he worked from May 2018 through September 3, 2023. (SAC ¶¶ 90-92.) From May 22, 2018 through September 3, 2023, Plaintiff Yac worked 9 hours per day, six days per week (54 hours per week), and was paid $110 per day, resulting in an hourly rate of $12.22. (Id. ¶¶ 90-93.) The minimum wage was $12 from May 2018 through December 30, 2018. Accordingly, Plaintiff Yac has not stated a claim for minimum wage violations for the period from May 2018 through December 30, 2018. The minimum wage rate was $13.50 from December 31, 2018 through December 30, 2019. Plaintiff Yac was paid $12.22 in that time period and has stated a claim for minimum wage violations for that period. The minimum wage was $15 from December 31, 2019 through the end of Plaintiff's employment. Plaintiff Yac was paid $12.22 in this remaining time period. Plaintiff Yac has stated a claim for minimum wage violations for that period. Plaintiff Yac also states that he worked 10 hours per day, six days per week in October 2023, but he does not state how much he was paid in that period. (Id. ¶ 91.) Accordingly, Plaintiff Yac las has stated a claim for minimum wage violations for the period of December 31, 2018 through September 3, 2023.

Plaintiff Salazar alleges that during her employment period from May 2018 through December 2023, she regularly worked nine hours per day, five days per week (45 hours per week). (SAC ¶¶ 103.) From May 22, 2018 to February 28, 2020, she was paid $90 per day, resulting in an hourly rate of $10. (Id. ¶ 105.) From March 1, 2020 to December 31, 2021, she was paid $100 per day, resulting in an hourly rate of $11.11. (Id. ¶ 106.) From January 1, 2022 to December 31, 2023, she was paid $115 per day, resulting in an hourly rate of $12.78. (Id. ¶ 107.) The minimum wage rate was $12 from May 2018 through December 30, 2018, $13.50 from December 31, 2018 through December 30, 2019, and $15 from December 31, 2019 through the end of Plaintiff's employment period. Accordingly, Plaintiff Salazar has stated a claim for minimum wage violations for all employment periods.

Because Plaintiffs' allegations are uncontested, the Court respectfully recommends that Plaintiffs be deemed to have adequately alleged the elements necessary to establish liability on their minimum wage claims under the NYLL.

3. NYLL Overtime Claim

The NYLL entitles employees to overtime pay at a rate of one-and-one-half times the regular rate for any hours worked in excess of 40 hours in one workweek. 12 N.Y.C.R.R. §§ 142-2.2. Plaintiffs allege that the Remaining Defendants failed to pay them the applicable overtime wages, despite Plaintiffs working between 45 and 70 hours per week. (See SAC ¶¶ 148.) Because Plaintiffs' allegations are uncontested, the Court respectfully recommends that Plaintiffs be deemed to have adequately alleged the elements necessary to establish liability on these claims under the NYLL.

4. NYLL Wage Statement Violations

"Pursuant to the New York Wage Theft Protection Act ('WTPA'), an employer must provide its employees, at the time of hiring, a written notice containing, inter alia, 'the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;' 'the regular pay day designated by the employer;' and the employer's address and telephone number." Tzilin v. Jimmy G Constr. Corp., No. 23-CV-4047 (ENV)(MMH), 2024 WL 4309775 (E.D.N.Y. Sept. 26, 2024), at *10 (quoting NYLL § 195(1)(a)). Employers must also provide their employees with regular pay statements "listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked." Perry v. High Level Dev. Contracting & Sec. LLC, No. 120 CV 02180 (AMD) (PK), 2022 WL 1018791, at *8 (E.D.N.Y. Mar. 16, 2022), report and recommendation adopted, No. 20 CV 2180 (AMD) (PK), 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022) (quoting NYLL § 195(3)).

But the existence of a "statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." TransUnion LLC v. Ramirez, 594 U.S. 413, 426 (2021); Guthrie v. Rainbow Fencing Inc., 113 F.4th 300 (2d Cir. 2024) (applying the standing requirement of TransUnion to NYLL claims). Plaintiffs must still demonstrate that they were "*concretely harmed* by a defendant's statutory violation." TransUnion, 594 U.S. at 427 (emphasis in original). In the WTPA context, this means that "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm." Guthrie, 113 F.4th

at 308. "Courts in this Circuit are in agreement that a plaintiff has standing if he [or she] plausibly alleges that, by failing to provide the required wage statements, the employer was able to hide [its] violations of wage and hour laws and thus prevent the employee from determining and seeking payment for the precise amount of [his] unpaid wages." Roma v. David Carmili, Physician, P.C., 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (collecting cases) (quotations omitted).

Here, Plaintiffs allege that because of the Remaining Defendants' failure to provide wage statements, Plaintiffs were prevented from comparing their rates of pay to their hours worked, realizing that they were underpaid, and advocating for themselves or taking appropriate action to obtain the payments due. (SAC. ¶¶ 52, 67, 84, 98, 114.) Accordingly, the Court respectfully recommends that Plaintiffs be deemed to have sufficiently alleged injuries flowing from the Remaining Defendants' violations of the WTPA.

## III. Damages

Having found that Plaintiffs are entitled to default judgment with respect to their FLSA overtime wage violation and NYLL minimum wage, overtime wage, and wage statement violations, the Court next considers Plaintiffs' request for damages. Plaintiffs seek damages for their unpaid wages, liquidated damages, statutory damages, and pre-judgment interest.

### A. Legal Standard

When a default judgment is entered, the defendants are deemed to have admitted all well pleaded allegations in the Complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Montcalm Pub. Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir.

1989)); Au Bon Pain Corp., 653 F.2d at 65. However, plaintiffs must still prove damages in an evidentiary proceeding at which the defendants have the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc., 973 F.2d at 158. That said, while "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989). Rather, "the court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum." Id. (holding that "it was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment").

Here, Plaintiffs have provided detailed affidavits in support of their request for damages. (Dkt. No. 41-7, Flores Decl., Dkt. No. 41-8, Olivares Decl., Dkt. No. 41-9, Morales Decl., Dkt. No. 41-10, Salazar Decl., Dkt. No. 41-11, Yac Decl.) Plaintiffs also provided a damages chart, even though, as noted supra, some of Plaintiffs' calculations are incorrect. (Dkt. No. 41-4, Damages Chart.) Nevertheless, the Court sees no reason to delay a determination of Plaintiffs' damages.

B. Damages Requested by Plaintiff

Plaintiffs request $1,315,313.99 in damages, comprised of $523,274.25 in unpaid minimum and overtime wages, $523,274.25 in liquidated damages, $50,000 in statutory damages, $218,765.49 in pre-judgment interest, $4,022.50 in attorneys' fees, and $1,271.20 in costs. (Dkt. No. 41-4, Damages Chart; Dkt. No. 41-5, Report of Attorney's Fees and Costs.)

1. Unpaid Minimum Wages under the NYLL

Plaintiffs seek reimbursement for the unpaid minimum wages that they should have received pursuant to the NYLL. As stated above, Plaintiffs mostly were not paid the relevant minimum wage amounts during their employment. To calculate the minimum wage each Plaintiff was owed, for each period during which Plaintiffs were paid below the minimum wage, the Court multiplies the first 40 hours worked by the statutory minimum wage and by the number of weeks in a given period and then subtracts each Plaintiffs' actual wages paid for those 40 hours per week. Using the rates established supra, the Court calculates Plaintiffs' minimum wages as follows:

a) Plaintiff Olivares

| **Time Period** | **Weeks per Time Period** | **Hours per day** | **Hours per Week** | **Hourly Pay** | **Minimum wage** | **Unpaid Minimum Wages weekly** (owed wages - actual wages times 40) | **Unpaid Minimum Wages per time period** (unpaid weekly minimum wages times weeks per time period) |
|---|---|---|---|---|---|---|---|
| 5/22/2018 - 12/31/2018 | 31 | 9 | 63 | $8.89 ($355.6 /40 hours) | $12 ($480/40 hours) | $124.40 | $3,856.40 |
| 1/1/2019 - 12/31/2019 | 52 | 9 | 63 | $8.89 ($355.6 /40 hours) | $13.50 ($540/40 hours) | $184.40 | $9,588.80 |
| 1/1/2020 - 12/31/2020 | 52 | 9 | 63 | $8.89 ($355.6 /40 hours) | $15.00 ($600/40 hours) | $244.40 | $12,708.80 |
| 1/1/2021 - 12/31/2021 | 52 | 9 | 63 | $8.89 ($355.6 /40 hours) | $15.00 ($600/40 hours) | $244.40 | $12,708.80 |
| 1/1/2022 - 12/31/2022 | 52 | 9 | 63 | $8.89 ($355.6 /40 hours) | $15.00 ($600/40 hours) | $244.40 | $12,708.80 |
| 1/1/2023 - 9/3/2023 | 35 | 9 | 63 | $8.89 ($355.6 /40 hours) | $15.00 ($600/40 hours) | $244.40 | $8,554.00 |
| | | | | | | **TOTAL** | **$60,125.60** |

Accordingly, the Court respectfully recommends that Plaintiff Olivares be awarded $60,125.60 in unpaid minimum wages.

b) Plaintiff Flores

| **Time Period** | **Weeks per Time Period** | **Hours per day** | **Hours per Week** | **Hourly Rate** | **Minimum wage** | **Unpaid Minimum Wages weekly** (owed wages - actual wages times 40) | **Unpaid Minimum Wages per time period** (unpaid weekly minimum wages times weeks per time period) |
|---|---|---|---|---|---|---|---|
| 5/22/2018 - 12/31/2018 | 31 | 9 | 45 | $8.89 ($355.6/40 hours) | $12 ($480/40 hours) | $124.40 | $3,856.40 |
| 1/1/2019 - 12/31/2019 | 52 | 9 | 45 | $8.89 ($355.6/40 hours) | $13.50 ($540/40 hours) | $184.40 | $9,588.80 |
| 1/1/2020 - 6/30/2020 | 26 | 9 | 45 | $8.89 ($355.6/40 hours) | $15.00 ($600/40 hours) | $244.40 | $6,354.40 |
| 7/1/2020 - 12/31/2020[5] | 26 | 9 | 45 | $11.11 ($444.40/40 hours) | $15.00 ($600/40 hours) | $155.60 | $4,045.60 |
| 1/1/2021 - 12/31/2021 | 52 | 9 | 45 | $11.11 ($444.40/40 hours) | $15.00 ($600/40 hours) | $155.60 | $8,091.20 |
| 1/1/2022 - 12/31/2022 | 52 | 9 | 45 | $11.11 ($444.40/40 hours) | $15.00 ($600/40 hours) | $155.60 | $8,091.20 |
| 1/1/2023 - 2/28/2023 | 8 | 9 | 45 | $11.11 ($444.40/40 hours) | $15.00 ($600/40 hours) | $155.60 | $1,244.80 |
| 3/1/2023 - 8/21/2023 | 25 | 9 | 45 | $13.33 (533.20/40 hours) | $15.00 ($600/40 hours) | $66.80 | $1,670.00 |
| | | | | | | **TOTAL** | **$42,942.40** |

Accordingly, the Court respectfully recommends that Plaintiff Flores be awarded $42,942.40 in unpaid minimum wages.

[5] The Court notes that, as stated in footnote 1, the Court views Plaintiff Flores's allegation that he worked from July 1, 2020 through February 28, 2020 as a scrivener's error, and therefore calculates Plaintiff's damages as if she had alleged that she worked from July 1, 2020 through February 28, 2023, as stated in the damages chart. (See Damages Chart; SAC ¶¶ 61-62.)

c) <u>Plaintiff Morales</u>

| **Time Period** | **Weeks per Time Period** | **Hours per day** | **Hours per Week** | **Hourly Rate** | **Minimum wage** | **Unpaid Minimum Wages weekly** (owed wages - actual wages times 40) | **Unpaid Minimum Wages per time period** (unpaid weekly minimum wages times weeks per time period) |
|---|---|---|---|---|---|---|---|
| 5/22/2018 - 12/31/2018 | 31 | 9 | 63 | $10.79 ($431.60/40 hours) | $12 ($480/40 hours) | $48.40 | $1,500.40 |
| 1/1/2019 - 12/31/2019 | 52 | 9 | 63 | $10.79 ($431.60/40 hours) | $13.50 ($540/40 hours) | $108.40 | $5,636.80 |
| 1/1/2020 - 10/31/2020 | 43 | 9 | 63 | $10.79 ($431.60/40 hours) | $15.00 ($600/40 hours) | $168.40 | $7,241.20 |
| 11/1/2020 - 12/31/2020[6] | 9 | 9 | 63 | $10.79 ($431.60/40 hours) | $15.00 ($600/40 hours) | $168.40 | $1,515.60 |
| 1/1/2021 - 12/31/2021 | 52 | 9 | 63 | $10.79 ($431.60/40 hours) | $15.00 ($600/40 hours) | $168.40 | $8,756.80 |
| 1/1/2022 - 6/30/2022 | 26 | 9 | 63 | $10.79 ($431.60/40 hours) | $15.00 ($600/40 hours) | $168.40 | $4,378.40 |
| 7/1/2022 - 12/31/2022 | 26 | 10 | 70 | $11.43 ($457.20/40 hours) | $15.00 ($600/40 hours) | $142.80 | $3,712.80 |
| 1/1/2023 - 9/5/2023 | 35 | 10 | 70 | $11.43 ($457.20/40 hours) | $15.00 ($600/40 hours) | $142.80 | $4,998 |
| | | | | | | **TOTAL** | **$37,740** |

Accordingly, the Court respectfully recommends that Plaintiff Morales be awarded $37,740 in unpaid minimum wages.

[6] The Court notes that, as stated in footnote 2, the Court views Plaintiff Morales's allegation that he worked from November 1, 2020 through June 30, 2020 as a scrivener's error, and therefore calculates Plaintiff's damages as if he had alleged that he worked from November 1, 2020 through June 30, 2022, as stated in the damages chart. (<u>See</u> Damages Chart; SAC ¶ 74.)

d) Plaintiff Yac

| Time Period | Weeks per Time Period | Hours per day | Hours per Week | Hourly Rate | Minimum wage | Unpaid Minimum Wages weekly (owed wages - actual wages times 40) | Unpaid Minimum Wages per time period (unpaid weekly minimum wages times weeks per time period) |
|---|---|---|---|---|---|---|---|
| 5/22/2018 - 12/31/2018 | 31 | 9 | 54 | $12.22 (488.80 /40 hours) | $12 ($480/40 hours) | $ - | $ - |
| 1/1/2019 - 12/31/2019 | 52 | 9 | 54 | $12.22 (488.80 /40 hours | $13.50 ($540/40 hours) | $51.20 | $2,662.40 |
| 1/1/2020 - 12/31/2020 | 52 | 9 | 54 | $12.22 (488.80 /40 hours | $15.00 ($600/40 hours) | $111.20 | $5,782.40 |
| 1/1/2021 - 12/31/2021 | 52 | 9 | 54 | $12.22 (488.80 /40 hours | $15.00 ($600/40 hours) | $111.20 | $5,782.40 |
| 1/1/2022 - 12/31/2022 | 52 | 9 | 54 | $12.22 (488.80 /40 hours | $15.00 ($600/40 hours) | $111.20 | $5,782.40 |
| 1/1/2023 - 9/3/2023 | 35 | 9 | 54 | $12.22 (488.80 /40 hours | $15.00 ($600/40 hours) | $111.20 | $3,892.00 |
| | | | | | | **TOTAL** | **$23,901.60** |

Due to Plaintiff Yac's inconsistent statements regarding his employment period, the Court respectfully recommends that Plaintiff Yac be awarded damages for his employment period from May 22, 2018 through September 3, 2023, and that Plaintiff Yac's request for damages for the remaining time period be denied without prejudice. Accordingly, the Court respectfully recommends that Plaintiff Yac be awarded $23,901.60 in unpaid minimum wages.

e) Plaintiff Salazar

| Time Period | Weeks per Time Period | Hours per day | Hours per Week | Hourly Rate | Minimum wage | Unpaid Minimum Wages weekly (owed wages - actual wages times 40) | Unpaid Minimum Wages per time period (unpaid weekly minimum wages times weeks per time period) |
|---|---|---|---|---|---|---|---|
| 5/22/2018 - 12/31/2018 | 31 | 9 | 45 | $10.00 ($400/40 hours) | $12 ($480/40 hours) | $80 | $2,480 |
| 1/1/2019 - 12/31/2019 | 52 | 9 | 45 | $10.00 ($400/40 hours) | $13.50 ($540/40 hours) | $140 | $7,280 |
| 1/1/2020 - 2/28/2020 | 8 | 9 | 45 | $10.00 ($400/40 hours) | $15.00 ($600/40 hours) | $200 | $1,600 |
| 3/1/2020 - 12/31/2020 | 44 | 9 | 45 | $11.11 ($444.40/ 40 hours) | $15.00 ($600/40 hours) | $155.60 | $6,846.40 |
| 1/1/2021 - 12/31/2021 | 52 | 9 | 45 | $11.11 ($444.40/ 40 hours) | $15.00 ($600/40 hours) | $155.60 | $8,091.20 |
| 1/1/2022 - 12/31/2022 | 52 | 9 | 45 | $12.78 (511.11/40 hours) | $15.00 ($600/40 hours) | $88.89 | $4,622.28 |
| 1/1/2023 - 8/31/2023 | 35 | 9 | 45 | $12.78 (511.11/40 hours) | $15.00 ($600/40 hours) | $88.89 | $3,111.15 |
| | | | | | | **TOTAL** | **$34,031.03** |

Accordingly, the Court respectfully recommends that Plaintiff Salazar be awarded $34,031.03 in unpaid minimum wages.

2. Unpaid Overtime Wages Under the FLSA and NYLL

Plaintiffs seek reimbursement for the unpaid overtime wages that they should have received pursuant to the FLSA and NYLL. (See SAC Prayer for Relief.) Employees covered under the FLSA are entitled to be paid for overtime hours (*i.e.*, those exceeding 40 hours per

week), at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). "Under the FLSA, the 'regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked[.]'" Pineda v. Frisolino, Inc., No. 15 CIV. 3774 (GBD), 2017 WL 3835882, at *10 (S.D.N.Y. Aug. 29, 2017) (quoting 29 C.F.R. § 778.109). The regular rate of the employee as defined in the FLSA, however, "cannot be lower than" the applicable minimum wage. 29 C.F.R. § 778.5; Martinez v. Alimentos Saludables Corp., No. 16 CV 1997 (DLI)(CLP), 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017). Thus, under the FLSA, overtime pay should be calculated based on the employee's regular wage or the statutory minimum wage, "whichever is greater." Id. at *16 (citing 29 U.S.C. § 207; 29 C.F.R. § 778.107).

The NYLL similarly entitles employees to overtime pay at a rate of one-and-one-half times the regular rate for any hours worked in excess of 40 hours in one workweek. 12 N.Y.C.R.R. §§ 142-2.2. The regular rate under the NYLL is calculated "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5. As with the FLSA, under the NYLL, courts calculate an employee's overtime rate using the statutory minimum wage if the employee's pay falls below the minimum wage rate. Rosendo v. Everbrighten Inc., No. 13 CV 7256-JGK-FM, 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015), report and recommendation adopted, No. 13 CV 7256 JGK, 2015 WL 4557147 (S.D.N.Y. July 28, 2015).

Plaintiffs may not recover unpaid overtime wages under both the NYLL and the FLSA. Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 49 n. 15 (E.D.N.Y. 2015) (citing

Pinzon v. Paul Lent Mech. Sys., Inc., No. CV 11-3384 (DRH)(WDW), 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012) (holding that a plaintiff may "not double dip" or obtain "double recovery" of unpaid overtime wages under the FLSA and the NYLL), report and recommendation adopted, No. 11 CV 3384 (DRH) (WDW), 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012)). Thus, to avoid double recovery and to allow for the recovery of pre-judgment interest on Plaintiffs' overtime claim (see infra at 44–45), the Court recommends damages under the NYLL but not under the FLSA.

Plaintiffs allege that at all relevant times they worked in excess of 40 hours per week. (See SAC ¶¶ 43, 44, 57, 58, 72-75, 89-91, 103, 148; Flores Decl. ¶ 10, Olivares Decl., ¶ 10, Morales Decl., ¶ 10, Salazar Decl., ¶ 10, Yac Decl., ¶ 10.) Plaintiffs further allege that they were never compensated at the one-and-one-half time overtime rate for the hours of overtime they worked. (Flores Decl. ¶ 18, Olivares Decl., ¶ 16, Morales Decl., ¶ 18, Salazar Decl., ¶ 17, Yac Decl., ¶ 16.) With the exception of Plaintiff Yac, who was paid more than the minimum wage rate from May 2018 through December 30, 2018, Plaintiffs were paid less than the minimum wage, so the Court calculates Plaintiffs' overtime rates using the minimum wage rates. Utilizing the overtime rates based on the applicable minimum wage, the Court calculates Plaintiffs' overtime damages as follows:

a) Plaintiff Olivares

| Time Period | Weeks per Time Period | Hours per Week | Hours worked overtime | Amount Paid for Hours Worked Overtime (regular wage rate * hours worked OT) | Overtime Wage Rate (Minimum wage rate * 1.5) | Overtime Owed Based on Overtime Wage Rate (OT rate * hours worked overtime) | Unpaid Overtime Wages weekly (OT owed – wages paid) | Unpaid Overtime Wages per time period (unpaid weekly OT wages times weeks per time period) |
|---|---|---|---|---|---|---|---|---|
| 5/22/2018 - 12/31/2018 | 31 | 63 | 23 | $204.47 ($8.89* 23) | $18 ($12 min. wage) | $414 | $209.53 | $6,495.43 |
| 1/1/2019 - 12/31/2019 | 52 | 63 | 23 | $204.47 ($8.89* 23) | $20.25 ($13.50 min. wage) | $465.75 | $261.28 | $13,586.56 |
| 1/1/2020 - 12/31/2020 | 52 | 63 | 23 | $204.47 ($8.89* 23) | $22.50 ($15 min. wage) | $517.50 | $313.03 | $16,277.56 |
| 1/1/2021 - 12/31/2021 | 52 | 63 | 23 | $204.47 ($8.89* 23) | $22.50 ($15 min. wage) | $517.50 | $313.03 | $16,277.56 |
| 1/1/2022 - 12/31/2022 | 52 | 63 | 23 | $204.47 ($8.89* 23) | $22.50 ($15 min. wage) | $517.50 | $313.03 | $16,277.56 |
| 1/1/2023 - 9/3/2023 | 35 | 63 | 23 | $204.47 ($8.89* 23) | $22.50 ($15 min. wage) | $517.50 | $313.03 | $10,956.05 |
| | | | | | | | **TOTAL** | **$79,870.72** |

Accordingly, the Court respectfully recommends that Plaintiff Olivares be awarded $79,870.72 in unpaid overtime wages.

b) Plaintiff Flores

| Time Period | Weeks per Time Period | Hours per Week | Hours worked overtime | Amount Paid for Hours Worked Overtime (regular wage rate * hours worked OT) | Overtime Wage Rate (Minimum wage rate * 1.5) | Overtime Owed Based on Overtime Wage Rate (OT rate * hours worked overtime) | Unpaid Overtime Wages weekly (OT owed – wages paid) | Unpaid Overtime Wages per time period (unpaid weekly OT wages times weeks per time period) |
|---|---|---|---|---|---|---|---|---|
| 5/22/2018 - 12/31/2018 | 31 | 45 | 5 | $44.45 ($8.89 *5) | $18 ($12 min. wage) | $90.00 | $45.55 | $1,412.05 |
| 1/1/2019 - 12/31/2019 | 52 | 45 | 5 | $44.45 ($8.89 *5) | $20.25 ($13.50 min. wage) | $101.25 | $56.80 | $2,953.60 |
| 1/1/2020 - 6/30/2020 | 26 | 45 | 5 | $44.45 ($8.89 *5) | $22.50 ($15 min. wage) | $112.50 | $68.05 | $1,769.30 |
| 7/1/2020 - 12/31/2020 | 26 | 45 | 5 | $55.55 ($11.11* 5) | $22.50 ($15 min. wage) | $112.50 | $56.95 | $1,480.70 |
| 1/1/2021 - 12/31/2021 | 52 | 45 | 5 | $55.55 ($11.11* 5) | $22.50 ($15 min. wage) | $112.50 | $56.95 | $2,961.40 |
| 1/1/2022 - 12/31/2022 | 52 | 45 | 5 | $55.55 ($11.11* 5) | $22.50 ($15 min. wage) | $112.50 | $56.95 | $2,961.40 |
| 1/1/2023 - 2/28/2023 | 8 | 45 | 5 | $55.55 ($11.11* 5) | $22.50 ($15 min. wage) | $112.50 | $56.95 | $455.60 |
| 3/1/2023 - 8/21/2023 | 25 | 45 | 5 | $66.65 ($13.33 *5) | $22.50 ($15 min. wage) | $112.50 | $45.85 | $1,146.25 |
| | | | | | | | **TOTAL** | **$15,140.30** |

Accordingly, the Court respectfully recommends that Plaintiff Flores be awarded $15,140.30 in unpaid overtime wages.

c) Plaintiff Morales

| **Time Period** | **Weeks per Time Period** | **Hours per Week** | **Hours worked overtime** | **Amount Paid for Hours Worked Overtime** (regular wage rate * hours worked OT) | **Overtime Wage Rate** (Minimum wage rate * 1.5) | **Overtime Owed Based on Overtime Wage Rate** (OT rate * hours worked overtime) | **Unpaid Overtime Wages weekly** (OT owed – wages paid) | **Unpaid Overtime Wages per time period** (unpaid weekly OT wages times weeks per time period) |
|---|---|---|---|---|---|---|---|---|
| 5/22/2018 - 12/31/2018 | 31 | 63 | 23 | $248.17 ($10.79*23) | $18 ($12 min. wage) | $414.00 | $165.83 | $5,140.73 |
| 1/1/2019 - 12/31/2019 | 52 | 63 | 23 | $248.17 ($10.79*23) | $20.25 ($13.50 min. wage) | $465.75 | $217.58 | $11,314.16 |
| 1/1/2020 - 10/31/2020 | 43 | 63 | 23 | $248.17 ($10.79*23) | $22.50 ($15 min. wage) | $517.50 | $269.33 | $11,581.19 |
| 11/1/2020 - 12/31/2020 | 9 | 63 | 23 | $248.17 ($10.79*23) | $22.50 ($15 min. wage) | $517.50 | $269.33 | $2,423.97 |
| 1/1/2021 - 12/31/2021 | 52 | 63 | 23 | $248.17 ($10.79*23) | $22.50 ($15 min. wage) | $517.50 | $269.33 | $14,005.16 |
| 1/1/2022 - 6/30/2022 | 26 | 63 | 23 | $248.17 ($10.79*23) | $22.50 ($15 min. wage) | $517.50 | $269.33 | $7,002.58 |
| 7/1/2022 - 12/31/2022 | 26 | 70 | 30 | $342.90 ($11.43*30) | $22.50 ($15 min. wage) | $675.00 | $332.10 | $8,634.60 |
| 1/1/2023 - 9/5/2023 | 35 | 70 | 30 | $342.90 ($11.43*30) | $22.50 ($15 min. wage) | $675.00 | $332.10 | $11,623.50 |
| | | | | | | | **TOTAL** | **$71,725.89** |

Accordingly, the Court respectfully recommends that Plaintiff Morales be awarded $71,725.89 in unpaid overtime wages.

d) <u>Plaintiff Yac</u>

| **Time Period** | **Weeks per Time Period** | **Hours per Week** | **Hours worked overtime** | **Amount Paid for Hours Worked Overtime** (regular wage rate * hours worked OT) | **Overtime Wage Rate** (regular rate OR Minimum wage rate * 1.5) | **Overtime Owed Based on Overtime Wage Rate** (OT rate * hours worked overtime) | **Unpaid Overtime Wages weekly** (OT owed – wages paid) | **Unpaid Overtime Wages per time period** (unpaid weekly OT wages times weeks per time period) |
|---|---|---|---|---|---|---|---|---|
| 5/22/2018 - 12/31/2018 | 31 | 54 | 14 | $171.08 ($12.22*14) | $18.33 ($12.22 hourly wage) | $256.62 | $85.54 | $2,651.74 |
| 1/1/2019 - 12/31/2019 | 52 | 54 | 14 | $171.08 ($12.22*14) | $20.25 ($13.50 min. wage) | $283.50 | $112.42 | $5,845.84 |
| 1/1/2020 - 12/31/2020 | 52 | 54 | 14 | $171.08 ($12.22*14) | $22.50 ($15 min. wage) | $315 | $143.92 | $7,483.84 |
| 1/1/2021 - 12/31/2021 | 52 | 54 | 14 | $171.08 ($12.22*14) | $22.50 ($15 min. wage) | $315 | $143.92 | $7,483.84 |
| 1/1/2022 - 12/31/2022 | 52 | 54 | 14 | $171.08 ($12.22*14) | $22.50 ($15 min. wage) | $315 | $143.92 | $7,483.84 |
| 1/1/2023 - 9/3/2023 | 35 | 54 | 14 | $171.08 ($12.22*14) | $22.50 ($15 min. wage) | $315 | $143.92 | $5,037.20 |
| | | | | | | | **TOTAL** | **$35,986.30** |

Due to Plaintiff Yac's inconsistent statements regarding his employment period, the Court respectfully recommends that Plaintiff Yac be awarded damages for his employment period from May 22, 2018 through September 3, 2023, and that Plaintiff Yac's request for damages for the remaining time period be denied without prejudice. Accordingly, the Court respectfully recommends that Plaintiff Yac be awarded $35,986.30 in unpaid overtime wages.

e) <u>Plaintiff Salazar</u>

| **Time Period** | **Weeks per Time Period** | **Hours per Week** | **Hours worked overtime** | **Amount Paid for Hours Worked Overtime** (regular wage rate * hours worked OT) | **Overtime Wage Rate** (Minimum wage rate * 1.5) | **Overtime Owed Based on Overtime Wage Rate** (OT rate * hours worked overtime) | **Unpaid Overtime Wages weekly** (OT owed – wages paid) | **Unpaid Overtime Wages per time period** (unpaid weekly OT wages times weeks per time period) |
|---|---|---|---|---|---|---|---|---|
| 5/22/2018 - 12/31/2018 | 31 | 45 | 5 | $50.00 ($10*5) | $18 ($12 min. wage) | $90 | $40 | $1,240 |
| 1/1/2019 - 12/31/2019 | 52 | 45 | 5 | $50.00 ($10*5) | $20.25 ($13.50 min. wage) | $101.25 | $51.25 | $2,665 |
| 1/1/2020 - 2/28/2020 | 8 | 45 | 5 | $50.00 ($10*5) | $22.50 ($15 min. wage) | $112.50 | $62.50 | $500 |
| 3/1/2020 - 12/31/2020 | 44 | 45 | 5 | $55.56 ($11.11*5) | $22.50 ($15 min. wage) | $112.50 | $56.94 | $2,505.36 |
| 1/1/2021 - 12/31/2021 | 52 | 45 | 5 | $55.56 ($11.11*5 | $22.50 ($15 min. wage) | $112.50 | $56.94 | $2,960.88 |
| 1/1/2022 - 12/31/2022 | 52 | 45 | 5 | $63.89 ($12.78*5) | $22.50 ($15 min. wage) | $112.50 | $48.61 | $2,527.72 |
| 1/1/2023 - 8/31/2023 | 4 | 45 | 5 | $63.89 ($12.78*5) | $22.50 ($15 min. wage) | $112.50 | $48.61 | $1,701.35 |
| | | | | | | | **TOTAL** | **$14,100.31** |

Accordingly, the Court respectfully recommends that Plaintiff Salazar be awarded $14,100.31 in unpaid overtime wages.

3. Unpaid Wage Damages Summary

In summary, the Court recommends that Plaintiffs be awarded the following unpaid minimum and overtime wages:

| **Plaintiff** | **Unpaid Minimum Wages Owed** | **Unpaid Overtime Wages Owed** | **Unpaid Total** |
|---|---|---|---|
| Olivares | $60,125.60 | $79,870.72 | $139,996.32 |
| Flores | $42,942.40 | $15,140.30 | $58,082.70 |
| Morales | $37,740 | $71,725.89 | $109,465.89 |
| Yac | $23,901.60 | $35,986.30 | $59,887.90 |
| Salazar | $34,031.03 | $14,100.31 | $48,131.34 |
| **TOTAL** | **$198,740.63** | **$216,823.52** | **$415,564.15** |

4. Liquidated Damages

Plaintiffs seek liquidated damages equal to 100% of the unpaid wages. Both the FLSA and the NYLL allow for liquidated damages. 29 U.S.C. § 216(b); NYLL §§ 198(1-a) and 663(1). While plaintiffs may not recover "twice for the same injury," they may "recover under the statute which provides the greatest amount of damages[.]" Charvac v. M & T Project Managers of New York, Inc., No. 12-CV-05637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015), report and recommendation adopted as modified, No. 12-CV-5637 (CBA) (RER), 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015) (quoting Jiao, 2007 WL 4944767, at *17). Under both the FLSA and the NYLL, the employer bears the burden of proving that it had a good faith basis for believing that its underpayment of wages complied with the law. See 29 U.S.C. § 260, NYLL § 198(1–a). This burden "'is a difficult one, with double damages being the

norm and single damages the exception.'" Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (awarding 100% liquidated damages under the FLSA standard) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999), holding modified by Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61 (2d Cir. 2003)).

Here, the Remaining Defendants have defaulted and have not alleged any facts or put forward any arguments to establish that they had a good faith basis to believe that their underpayment of wages complied with the FLSA or the NYLL. Accordingly, the Court respectfully recommends that Plaintiffs be awarded liquidated damages in an amount equal to 100% of the minimum wages and overtime wages owed under the NYLL, totaling $415,564.15.

5. Wage Statement and Notice Penalties Under NYLL

Plaintiffs also each request $10,000 in statutory damages for the Remaining Defendants' failure to provide a wage notice at hiring (in violation of NYLL § 195(1)) and accurate regular wage statement with each payment of wages (in violation of NYLL § 195(3)). (See SAC ¶¶ 152, 156, 157.) Under the WTPA, employers must provide wage notices at hiring, NYLL § 195(1), and plaintiffs may recover $50 per day up to $5,000 for violations of this provision. NYLL § 198(1-b), Jimenez, 744 F. Supp. 3d at 255 ("Violations of NYLL § 195(1) carry damages of $50 per workday, for a maximum of amount of $5,000.") (quoting Flores v. Andy Constr. NY Inc., No. 22-CV-06486 (OEM) (JMW), 2024 WL 2940191, at *17 (E.D.N.Y. Apr. 14, 2024), report and recommendation adopted, No. 1:22-CV-6486 (OEM), 2024 WL 3914859 (E.D.N.Y. Aug. 23, 2024)). Plaintiffs may also recover $250 per day up to $5000 for failure to provide regular wage statements, in violation of NYLL § 195(3). NYLL § 198 (1-d), Jimenez, 744 F. Supp. 3d at 255.

Plaintiffs have established liability for their WTPA claims. Each Plaintiff worked for Defendants for more than 100 days and each Plaintiff is thus entitled to $5,000 for the Remaining Defendants' failure to provide a wage notice at hiring and $5,000 for the Remaining Defendants' failure to provide wage statements. The Court thus respectfully recommends that each Plaintiff be awarded $10,000 in WTPA damages.

C. Set-Off

"Courts in this District have reached different conclusions in considering whether to apply, *sua sponte*, a set-off on behalf of a defaulting defendant for amounts paid to plaintiffs by settling co-defendants, with some courts reducing awards on default judgment by the amounts received in settlement from co-defendants with whom the defaulting defendants were jointly and severally liable." Alzal Corp. v. Killer Carz LLC, No. 15-CV-4968 (RPK)(MMH), 2024 WL 3871074, at *7 (E.D.N.Y. Aug. 19, 2024) (internal quotation makes omitted) (quoting Lelchook v. Islamic Republic of Iran, No. 16-CV-7078 (ILG), 2020 WL 12656283, at *12 (E.D.N.Y. Nov. 23, 2020) (collecting cases), adopted in relevant part by 2022 WL 499901 (E.D.N.Y. Feb. 18, 2022). A court "may use its discretion in considering the circumstances and the amount of the settlement in deciding whether to apply an offset." Id. (quoting Sirius XM Radio Inc. v. Aura Multimedia Corp., No. 21-CV-6963 (GHW)(SDA), 2024 WL 1756854, at *8 (S.D.N.Y. Apr. 6, 2024). "Most courts in the Second Circuit . . . have held that a defendant in default may not invoke the benefits of the set-off rule" because "it is the defendant's burden to demonstrate the extent to which the recovery against it would be duplicative of the plaintiff's recovery from settling defendants, and by virtue of the defendant's failure to participate in the litigation, it cannot satisfy this burden." Allstate Ins. Co. v. Yehudian, CV 14-4826 (JS)(AKT), 2018 WL 1767873, at *19 (E.D.N.Y. Feb. 15, 2018) (quotation marks and citations omitted), report and

recommendation adopted, No. 14-CV-4826 (JS)(AKT), 2018 WL 1686106 (E.D.N.Y. Mar. 31, 2018); State Farm Mutual Auto. Ins. Co. v. Grafman, 968 F. Supp. 2d 480, 483 (E.D.N.Y. 2013) ("In choosing not to participate in the litigation, a defaulting party eschews the opportunity to carry this burden, and therefore does not demonstrate its entitlement to, or deserve the benefit of, a set-off"). Courts that have reduced awards on default judgment by the amounts received in settlement from co-defendants with whom defaulting defendants were jointly and severally liable have "largely relied on the principle that plaintiffs should not receive a windfall for their federal claims, and that, under federal common law, the right to set-off is not an affirmative defense that is waived by defaulting." Lelchook, 2020 WL 12656283, at *12. In many cases where courts have applied the set-off rule, plaintiffs agreed to reduce their recovery. See Yehudian, 2018 WL 1767873, at *19 (collecting cases).

Plaintiffs request that the Court not set off the amount of Plaintiffs' settlement with 1787 Realty Corp., arguing that most courts do not apply the setoff when defendants have defaulted and that defendants should not get the benefit of the setoff when they have not appeared. (See Dkt. No. 54, Mem. in Support.)

The Court agrees. Defendants have willfully defaulted and have not put forth any arguments about why the Court should offset the settlement amount or to what extent Plaintiffs' recovery here would be duplicative of Plaintiffs' recovery from 1787 Realty Corp. Accordingly, the Court respectfully recommends that the District Court not offset the damages awarded herein by $15,000, the settlement amount between Plaintiffs and 1787 Realty Corp.

D. Damages Summary

In sum, the Court respectfully recommends the following damages:

| | |
|---|---|
| Unpaid Wages | $ 415,564.15 |
| Liquidated Damages | $ 415,564.15 |
| Wage Statement and Notice Penalties | $ 50,000 |
| **TOTAL DAMAGES** | **$ 881,128.30** |

IV. Pre-Judgment Interest

Plaintiffs seek pre-judgment interest on their damages.

Under New York Law, plaintiffs are entitled to pre-judgment interest at a rate of 9 percent per year. See N.Y.C.P.L.R. § 5004. The Second Circuit has held that under the NYLL, liquidated damages and pre-judgment interest are not functional equivalents, so plaintiffs may recover both liquidated damages and pre-judgment interest for judgments rendered under the NYLL. Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).

Here, the Court respectfully recommends that Plaintiffs be awarded pre-judgment interest on their NYLL claims.

In New York, pre-judgment interest is "computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." N.Y. C.P.L.R. § 5001(b). In addition, "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was

incurred or upon all of the damages from a single reasonable intermediate date." Id. In determining pre-judgment interest, "[c]ourts have discretion in choosing a reasonable date from which to calculate" it. Ladino v. Cordova, No. 21 CV 2449 (ARR) (SJB), 2024 WL 968898, at *4 (E.D.N.Y. Feb. 14, 2024), report and recommendation adopted, No. 21 CV 2449 (ARR) (SJB), 2024 WL 967635 (E.D.N.Y. Mar. 6, 2024). In this district, courts most often select a "median date between the earliest ascertainable date the cause of action existed and the date the action was filed" from which to calculate pre-judgment interest. Id. (quoting Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012)). However, courts have also held as reasonable a midpoint based upon the period of employment subject to the NYLL claim. See, e.g., Thompson v. Hyun Suk Park, 18-CV-0006 (AMD) (ST), 2020 WL 5822455, at *11 (E.D.N.Y. Sep. 1, 2020), report and recommendation adopted, No. 18-CV-0006 (AMD) (ST), 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020) (calculating the midpoint between Plaintiffs' start and end dates, which represented "the period in which the NYLL claim accrued").

Plaintiffs argue that pre-judgment interest on Plaintiffs' back pay awards "should be computed from the median date of each time period to the date of judgment." (Pls.' Mem., ¶ 111.) The Court finds that Plaintiffs' suggested midpoint is reasonable. Accordingly, the Court respectfully recommends that Plaintiffs be awarded pre-judgment interest at the statutory rate of 9 percent from the below median dates until the date of judgment.

| **Plaintiff** | **Median Date of Employment Period** |
|---|---|
| Olivares | March 11, 2021 |
| Flores | January 4, 2021 |
| Morales | January 12, 2021 |

| | |
|---|---|
| Yac (based on employment period from May 22, 2018 to September 3, 2023) | January 11, 2021 |
| Salazar | January 9, 2021 |

V. Attorneys' Fees and Costs

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions." Callari v. Blackman Plumbing Supply, Inc., No. 11-CV-3655 (ADS) (AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), report and recommendation adopted, 2020 WL 2769266 (E.D.N.Y. May 28, 2020), see NYLL § 198(4), 663(1). "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request." Perry v. High Level Dev. Contracting & Sec. LLC, No. 12-CV-2180 (AMD) (PK), 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022), report and recommendation adopted, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022). In the Second Circuit, "[t]he lodestar method is ordinarily the starting point in determining the amount of fees that may be awarded." Seitzman v. Sun Life Assurance Co. of Canada, Inc., 311 F.3d 477, 487 (2nd Cir. 2002). To calculate reasonable attorneys' fees, courts multiply the number of hours reasonably expended on the case by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). What constitutes a "reasonable number of hours" and a "reasonable hourly rate" varies from case-to-case and attorney-to-attorney, and courts will often examine both the experience and expertise of the attorney as well as the complexity of the case. See Allen v. County of Nassau, 22-CV-1572 (JMW), 2023 WL 4086457, at *5 (E.D.N.Y. June 20, 2023) (collecting cases); Moore v. Rubin,

766 F. Supp. 3d 423, 428 (E.D.N.Y. Feb. 14, 2025) (finding that, "[a]fter an extensive and well-documented discussion of the impact of inflation on the cost of living…the reasonable hourly rates in this district are now $450 to $650 for partners, $300 to $450 for senior associates, $150 to $300 for junior associates, and $100 to $150 for paralegals.").

A. Attorneys' Fees

Plaintiffs request $4,022.50 in attorneys' fees. Plaintiffs' memorandum in support of their motion for default judgment states that two attorneys, Michael Faillace ("MF") and Robert Jun ("RJ"), along with a paralegal ("PL") performed work on the matter. (Pls.' Mem., ¶ 119.) Mr. Faillace is the Managing Member of Michael Faillace & Associates P.C. and has practiced law since 1983. (Pls.' Mem., ¶ 120(i).) Mr. Faillace's billing rate is $450 and he billed 1.7 hours. (Dkt. No. 41-5, Report of Attorneys' Fees and Costs.) Attorney Robert Jun is an associate attorney at Michael Faillace & Associates P.C. and has practiced since 2014. (Pls.' Mem., ¶ 120(ii).) Mr. Jun's billing rate is $350 and he billed 0.7 hours. (Dkt. No. 41-5, Report of Attorneys' Fees and Costs.) A paralegal ("PL") with a rate of $125 billed 5.2 hours. (Dkt. No. 41-5, Report of Attorneys' Fees and Costs.) Plaintiffs' Report of Attorneys' Fees and Costs indicates that three additional timekeepers, "EM", "CS", and "MM", billed on the matter, but Plaintiffs did not include the names and background of these timekeepers in their motion. (Dkt. No. 41-5, Report of Attorneys' Fees and Costs.; see Pls.' Mem., ¶ 119.)

The Court finds reasonable the hours expended by counsel Michael Faillace and Robert Jun and the paralegal. The Court further finds that their billing rates are reasonable because they fall within the reasonable hourly rates in this district. The Court does not find a basis to award additional fees. Although Plaintiffs list three additional timekeepers and request a total amount in attorneys' fees that exceeds the amount due for the work of Faillace, Jun, and the paralegal,

the request did not include any of the supporting documentation the Court would need to assess the reasonableness of additional fees. Accordingly, the Court respectfully recommends that Plaintiffs be awarded $1,660 in attorneys' fees for the work of Faillace, Jun, and the paralegal.

B. Costs

Prevailing parties are generally able to recover costs. However, recovery is available only for costs that are documented. Moon v. Gab Kown, No. 99 CV 11810 (GEL), 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002) (quoting Kuzma v. IRS, 821 F.2d 930, 933–34 (2d Cir. 1987). "[T]he party moving for costs bears the burden of demonstrating the reasonableness of each charge; failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery." John v. Demaio, No. 15 CV 6094 (NGG) (CLP), 2016 WL 7469862, at *12 (E.D.N.Y. Sept. 26, 2016), report and recommendation adopted, No. 15 CV 6094 (NGG) (CLP), 2016 WL 7410656 (E.D.N.Y. Dec. 22, 2016). Courts may take judicial notice of the complaint filing fee reflected on the docket. See Douyon v. NY Med. Health Care, P.C., 49 F. Supp. 3d 328 (E.D.N.Y. 2014), judgment entered sub nom. Douyon v. N.Y. Med. Health Care, P.C., No. 10 CV 3983 AKT, 2015 WL 5821499 (E.D.N.Y. Sept. 30, 2015) (taking judicial notice of the filing fee reflected on the docket).

Plaintiffs seek $5,293.70 in costs, comprised of $405 for the filing fee, $81 for service on former Defendant 18th Ave. Food Market, $175 for "Gotham: Docket #1303840," $44 for attempted service on Peter Rosito Fruit and Vegetable, $144 for "Gotham Peter Rosito and Vegetable," $181.20 for "DGR: Invoice Number 754809," $83 for service on 1787 Realty Corp., $83 for service on Defendant King Apple Farmers Market 3 Corp., and $75 for "Gotham: Docket #1337386." (See Dkt. No. 41-5, Report of Attorneys' Fees and Costs.)

The Court takes judicial notice of the filing fee, which was $405 as reflected on the docket. (Dkt. No. 1, Compl.) However, Plaintiffs have not substantiated their request for the remaining costs, and it is not even clear from Plaintiffs' submission what some of the costs are for. (See Dkt. No. 41-5, Report of Attorneys' Fees and Costs ($175 for "Gotham: Docket #1303840," $144 for "Gotham Peter Rosito and Vegetable," $181.20 for "DGR: Invoice Number 754809, $75 for "Gotham: Docket #1337386.")) Moreover, Plaintiffs appear to seek reimbursement for service on Defendants 18th Ave. Food Market, an entity that is not the subject of the instant motion. Plaintiffs also seek reimbursement for service of the default judgment motion on 1787 Realty Corp., but their judgment against 1787 Realty Corp. expressly included costs, so they cannot again recover this cost. Accordingly, the Court respectfully recommends that Plaintiffs be awarded $405 in costs.

## CONCLUSION

Based on the foregoing, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted, and that Plaintiffs be awarded the following damages:

1. $198,740.63 in unpaid minimum wages;
2. $216,823.52 in unpaid overtime wages;
3. $415,564.15 in liquidated damages;
4. $50,000 in statutory damages;
5. Pre-judgment interest at the statutory rate of 9 percent from the median dates established supra until judgment is entered, and
6. $2,065 in attorneys' fees and costs

Any objections to this Report and Recommendation must be filed with the Clerk of Court, with a copy to the undersigned, withing fourteen (14) days of receipt of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the district court's order. See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiffs' counsel is Ordered to serve a copy of this Report and Recommendation on defendants **today** via overnight delivery or courier and file proof of service immediately thereafter. The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail and to note mailing on the docket.

**SO ORDERED.**

Dated: Brooklyn, New York
August 25, 2026

/s/ Peggy Cross-Goldenberg

Peggy Cross-Goldenberg
United States Magistrate Judge
Eastern District of New York